T.C. Summary Opinion 2006-152


UNITED STATES TAX COURT


ROBERT G. AND LANA L. GALE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2088-06S.              Filed September 14, 2006.


Robert G. and Lana L. Gale, pro sese.

<u>R. Craig Schneider</u>, for respondent.


DAWSON, <u>Judge</u>:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year at issue. Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $6,860 deficiency in petitioners' Federal income tax and a $1,372 accuracy-related penalty under section 6662(a) for 2003. The primary issue for decision is whether petitioners were insolvent within the meaning of section 108(a)(1)(B) when the $39,274.90 second mortgage on their home was canceled following the sale of the home in 2003 caused by the default on the first mortgage.[2]

## Background

Some of the facts were stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners resided in Layton, Utah, when they filed the petition in this case.

Mrs. Gale is a homemaker and earns no income. Mr. Gale is employed by the Bureau of Land Management.

In 2003, Mr. Gale had back surgery and was out of work for several weeks. He did not receive a pay check for some weeks. Consequently, petitioners were unable to make the payments on two loans secured by mortgages on their home, a first mortgage held by First National Mortgage (First National) and a second mortgage held by Citibank. First National notified petitioners that it

---

[2]In the notice of deficiency, respondent also made adjustments to deductions for medical and dental expenses petitioners reported on Schedule A, Itemized Deductions, that are computed on the basis of the increase in petitioners' adjusted gross income.

intended to foreclose on the loan and suggested that they contact a real estate broker to arrange a short sale.[3]

On June 23, 2003, petitioners sold the house for $68,500. They incurred and paid settlement costs and taxes totaling $1,954.50, paid the total $61,615.50 balance outstanding on the first mortgage, and paid $1,500 of the total $40,775 balance outstanding on the second mortgage. Citibank forgave the remaining $39,275 outstanding on the second mortgage.

Petitioners' records show that petitioners' assets and liabilities before the sale of the house were as follows:

| Assets | Totals |
|---|---|
| House | $68,500 |
| Blazer | 25,000 |
| Cash accounts | 1,068 |
| Investments | -0- |
| Jewelry | 1,500 |
| Computer | 400 |
| Furniture/appliances | 2,000 |
| CSRS pension | NA |
| Thrift savings account | NA |

---

[3]A short sale in real estate occurs when the outstanding loans against a property are greater than what the property is worth and the lender agrees to accept less than it is owed to permit a sale of the property which secures its note.

| Liabilities | Totals |
|---|---|
| 1st mortgage | 61,616 |
| 2nd mortgage | 40,774 |
| RC Willey | 1,300 |
| Providian | 2,250 |
| Chase Mastercard | 5,000 |
| AmeriCredit | 32,465 |
| Medical | 550 |
| Medicine | 900 |
| Discover card | 2,500 |
| Texaco | 1,500 |
| Mrs. Gale's student loan | 6,000 |
| Dentist | 1,100 |

Petitioners purchased the 2001 Blazer in January 2001 for $32,000. Mr. Gale estimated that the Blazer was worth $25,000 when the second mortgage was canceled. He did not consult any publication showing used car values.

Petitioners' records do not show the value of Mr. Gale's CSRS pension benefit or thrift savings account at the time the second mortgage was canceled. Mr. Gale believed that had he retired in 2003, his CSRS pension benefit would have been approximately $858 per month. Mr. Gale contributed to a thrift savings account from about 1984 to 1990. He did not make any contributions to his thrift savings account after 1990. In 1998, Mr. Gale borrowed from his thrift savings account to make the downpayment on the house.

Petitioners employed Julie K. Young of JKY Tax Service to prepare their 2003 Form 1040, U.S. Individual Income Tax Return. Petitioners jointly filed the return prepared by Ms. Young.

Petitioners did not report the $39,275 discharge of indebtedness as income on the return.

Citibank sent petitioners a Form 1099-C, Cancellation of Debt, reporting the $39,275 discharge of indebtedness. After petitioners received the Form 1099-C, Ms. Young prepared and petitioners filed an amended return that reported the $39,275 as gain on the sale of their residence that was excludable from income.

## Discussion

### A. Deficiency

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that such determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a)(1) provides that the burden of proof as to factual matters shifts to the Commissioner under certain limited circumstances. Petitioners do not fall within these limited circumstances, and therefore the burden of proof remains with them.

Generally, discharge of indebtedness gives rise to gross income to the obligor. Sec. 61(a)(12); see Gitlitz v. Commissioner, 531 U.S. 206, 213 (2001). Section 108 provides certain exceptions to this general rule. Pursuant to one of these exceptions, income from discharge of indebtedness is

excluded from gross income if the discharge occurs when the taxpayer is insolvent. The amount of income from discharge of indebtedness excluded under section 108(a)(1)(B) is not to exceed the amount by which the taxpayer is insolvent. Sec. 108(a)(3). For purposes of section 108, the term "insolvent" means the excess of liabilities over the fair market value of assets. Sec. 108(d)(3). Whether the taxpayer is insolvent, and the amount by which the taxpayer is insolvent, is determined on the basis of the taxpayer's assets and liabilities immediately before the discharge.

Petitioners did not submit to respondent or to the Court any contemporaneous records or documents to establish the value of their assets or liabilities at the time the second mortgage was canceled. The night before the trial petitioners created a list of their assets and liabilities from information stored on their computer. Petitioners relied upon that list and Mr. Gale's oral testimony as evidence of the value of assets owned and liabilities owed in 2001 immediately before the discharge. Having observed Mr. Gale's appearance and demeanor at trial, we find his testimony to be honest, forthright, and credible. Immediately before the discharge of indebtedness, without regard to Mr. Gale's CSRS pension benefit and thrift savings account, petitioners had liabilities of $92,839 which exceeded the $29,968 value of their assets by $62,871, shown as follows:

Assets
  Blazer                    $25,000
  Cash accounts               1,068
  Investments                  -0-
  Jewelry                     1,500
  Computer                      400
  Furniture/appliances        2,000
    Total assets                              $29,968

Liabilities
  2nd mortgage               39,274
  RC Willey                   1,300
  Providian                   2,250
  Chase Mastercard            5,000
  AmeriCredit                32,465
  Medical                       550
  Medicine                      900
  Discover card               2,500
  Texaco                      1,500
  Mrs. Gale's stud.           6,000
  Dentist                     1,100
    Total liabilities                        (92,839)
  Net liabilities                            (62,871)

Although Mr. Gale believes that his CSRS pension benefit would have been about $858 per month had he retired in 2003, he did not provide any statements related to the value of that pension or his thrift savings account on the date the second mortgage was canceled. We have no way to accurately estimate the value of those assets on the date the second mortgage was canceled, and petitioners have not established that the combined value of Mr. Gale's thrift savings account and CSRS pension benefit was less than $62,871 on that date. Consequently, petitioners have failed to establish that they were insolvent

when the debt was canceled and that the insolvency exception of section 108(a)(1)(B) applies.

We hold that petitioners' income for 2003 includes $39,274 from the discharge of indebtedness that was not reported on their 2003 return.

B. <u>Accuracy-Related Penalty</u>

Section 7491(c) places the burden of production on the Commissioner with respect to the liability of any individual for any penalty, addition to tax, or additional amount.

Respondent contends that petitioners are liable for an accuracy-related penalty under section 6662(a). Respondent has the burden of production under section 7491(c) and must come forward with evidence sufficient for us to sustain the section 6662(a) penalty. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001). As pertinent here, section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to negligence or disregard of rules or regulations, sec. 6662(b)(1), or a substantial understatement of tax, sec. 6662(b)(2). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. An "understatement" is the excess of the amount of tax required to be shown on the tax

return over the amount of tax shown on the tax return, sec. 6662(d)(2)(A), and is "substantial" in the case of an individual if the understatement exceeds the greater of 10 percent of the tax required to be shown or $5,000, sec. 6662(d)(1)(A).

The penalty under section 6662(a) does not apply to any portion of an understatement of tax if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  Sec. 6664(c)(1).  Reasonable cause requires that the taxpayer exercise ordinary business care and prudence as to the disputed item.  See United States v. Boyle, 469 U.S. 241 (1985).  The good faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b), Income Tax Regs.  To show good faith reliance, the taxpayer must show that the return preparer was supplied with all the necessary information and the incorrect return was a result of the preparer's mistakes.  Neonatology Associates, P.A. v. Commissioner, supra at 99; Pessin v. Commissioner, 59 T.C. 473, 489 (1972); sec. 1.6664-4(c)(1)(i), Income Tax Regs.

We are convinced that petitioners provided Ms. Young with all the necessary information concerning the sale of their home and the cancellation of the second mortgage by Citibank.

Petitioners reasonably relied on Ms. Young.  Consequently, we hold that petitioners are not liable for the section 6662(a) accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered for respondent with respect to the deficiency and for petitioners with respect to the section 6662(a) accuracy-related penalty</u>.